# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 20-23585-Civ-WILLIAMS/TORRES

SEIDA MARTINEZ,

    Plaintiff,

v.

CELEBRITY CRUISES, INC. and
CAYMAN SEA ADVENTURES LTD d/b/a
MARINELAND TOURS,

    Defendants.

_____/

## REPORT AND RECOMMENDATION
## ON CELEBRITY'S MOTION TO DISMISS

This matter is before the Court on Celebrity Cruises, Inc. ("Celebrity") motion to dismiss Seida Martinez's ("Plaintiff" or "Ms. Martinez") complaint. [D.E. 8]. Ms. Martinez responded on December 18, 2020 [D.E. 14] to which Celebrity replied on December 28, 2020. [D.E. 17]. Therefore, Celebrity's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Celebrity's motion to dismiss should be **DENIED**.[1]

---

[1] On December 22, 2020, the Honorable Kathleen Williams referred Celebrity's motion to the undersigned Magistrate Judge for disposition. [D.E. 15].

## *I. BACKGROUND*

Ms. Martinez filed this action on August 27, 2020 [D.E. 1] for injuries she sustained while attempting to board a tour boat during a shore excursion in the Cayman Islands. Ms. Martinez alleges that, while the tour boat was in dock, a crewmember was assigned to assist her and other passengers onto the vessel. When it came time for Ms. Martinez to board the tour boat, the crewmember began to assist her but then stopped and looked away. *See id.* at ¶ 28. Ms. Martinez then fell and screamed, as she feared she would be crushed between the boat and the dock. The crewmember that failed to assist her then "violently pulled her, by her left hand, onto the boat." *Id.* at ¶ 30. Ms. Martinez suffered injuries to her left arm, both of her legs, and various scrapes and bruises to her body. As a result, she filed a five-count complaint for breach of a non-delegable duty, negligence, negligent selection and hiring, and negligent retention.

## *II. APPLICABLE PRINCIPLES AND LAW*

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2, (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

### *III. ANALYSIS*

Celebrity's motion seeks to dismiss four counts[2] in Ms. Martinez's complaint because they each fail to state a claim for which relief can be granted. Plaintiff opposes Celebrity's motion in all respects because the motion is legally incorrect, fails to grapple with the allegations presented, and otherwise relies on cases that are no longer good law. Before we turn to the merits, we must consider the principles of general maritime law to inform the analysis that follows.

A.   *<u>Principles of General Maritime Law</u>*

Claims arising from alleged tort actions aboard ships sailing in navigable waters are governed by general maritime law. *See Keefe v. Bahama Cruise Line, Inc.*, 861 F.2d 1318, 1320 (11th Cir. 1989). Absent an applicable statute, general maritime law is "an amalgam of traditional common-law rules, modifications of those rules and newly created rules" drawn from state and federal sources. *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864-65 (1986). Maritime law may be supplemented by state law principles so long as application of the state law does not place "substantive admiralty principles" at risk. *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421, 1426 (11th Cir. 1997); *see also Yamaha Motor Corp., U.S.A., v. Calhoun,* 516 U.S. 199, 210 (1996); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409 (1953). Given these general maritime principles, we consider the parties' arguments in turn.

---

[2]   Although Ms. Martinez presents five counts in her complaint, only count two is directly aimed at the excursion operator. All other counts are against Celebrity.

### B.     *Breach of a Non-Delegable Duty (Count 1)*

The first issue is whether Ms. Martinez has adequately stated a claim for breach of a non-delegable duty. Ms. Martinez alleges that Celebrity breached its non-delegable duties by committing one or more of the following acts:

> a. Failing to select a reasonably safe excursion operator;
> b. Failing to provide reasonably safe conditions for Plaintiff on an excursion. Said safe conditions include, but are not limited to, offering safe ingress and egress from the dock on to the tour boat;
> c. Failing to implement a reasonable system of tracking prior similar incidents with the subject operators and the resulting injuries to passengers;
> d. Failing to implement and enforce rules governing the operation of excursions by excursion operators;
> e. Failing to ensure [Cayman] provided a safe method of ingress and egress for passengers by providing a step ladder and/or ramp and/or other assistive device;
> f. Failing to ensure [Cayman] protected passengers from dangerous points of ingress and egress from the dock on to the tour boat;
> g. Failing to ensure [Cayman] made, created, and maintained a safe method of ingress and egress for passengers onto the subject tour boat; and/or
> h. Failing to adhere to its advertised material representations with regard to the care and safety of passengers aboard its vessels during excursions offered by [Celebrity] found within various sources of information provided to prospective passengers including, but not limited to literature and [Celebrity's] website;
> i. Failing to protect passengers from injuries caused by excursion crewmembers;
> j. Failing to fulfill their representations made in their literature, on-line and otherwise about the safety during its excursions;
> k. Failing to make, create and maintain a safe environment for passengers as advertised; and/or
> l. Other acts of negligence and fault which will be proven at trial.

[D.E. 1 at ¶ 36].

Celebrity argues that count one should be dismissed because, under general maritime law, a plaintiff can only state a claim for the breach of a non-delegable

5

duty if "the ship owner executes a contractual provision that guarantees safe passage." *Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1372 (S.D. Fla. 2005) (citing *Hass v. Carnival Cruise Lines, Inc.*, 1986 WL 10154, at *1 (S.D. Fla. Mar. 20, 1986) (stating that a ship owner can be liable for breach of contract of safe passage if it executes such a contractual provision)). Celebrity claims that this duty must be expressly provided in a contract, and that Ms. Martinez failed to identify anything to meet this requirement. *See Hass*, 1986 WL 10154, at *1. In fact, Celebrity suggests that the reason Ms. Martinez failed to meet this requirement is because the underlying passenger ticket contract (attached in support of the motion to dismiss [D.E. 8-1]) never includes a duty to provide her with a reasonably safe excursion. Celebrity reasons that this is a fatal error because Ms. Martinez's allegations are unsupported under general maritime law and allowing her to proceed on this claim would impermissibly expand a ship owner's duties.

The problem with Celebrity's argument is that it relies on a rule that does not apply in this case. That rule prohibits a passenger from holding a cruise line liable for the breach of a ticket contract unless "there is an express provision . . . guaranteeing safe passage." *Doonan,* 404 F. Supp. 2d at 1372–73. "The law developed in this way to ensure that passengers aboard vessels could not sidestep the warranty of seaworthiness by asserting breaches of various implied contractual duties." *Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1145 (S.D. Fla. 2016) (citing *Hass, Inc.,* 1986 WL 10154, at *1).

Celebrity's argument is nothing new because cruise lines have tried many

6

times to use this rule in circumstances where it does not apply. Take, for instance, Judge Lenard's decision in *Witover*, where she held that an express provision guaranteeing safe passage is *not* required to state a claim for the breach of a shore excursion contract. *See id.* She explained that there is a fundamental difference between contracts for carriage and shore excursion contracts and "that while concerns related to the doctrine of seaworthiness may limit causes of action for breach of a contract for carriage, such a limitation does not apply to a claim for breach of a shore excursion contract." *Witover*, 161 F. Supp. 3d at 1145 (citing *Martinez v. Dixie Carriers, Inc.,* 529 F.2d 457, 470 n.8 (5th Cir. 1976) ("[T]he unseaworthiness remedy is not available for injuries which occur on shore during the loading or unloading process and which are not caused by a vessel on navigable water."); *Harling v. United States,* 416 F.2d 405, 406 (9th Cir. 1969) ("The doctrine of unseaworthiness does not extend to injuries caused by instrumentalities ashore."); *Kent v. Shell Oil Co.,* 286 F.2d 746, 752 (5th Cir. 1961) ("Where the injuries are sustained wholly ashore and are caused by a thing not a part of a vessel or its appurtenances, the failure or deficiency of such facility is not deemed either to constitute unseaworthiness or give rise to any recovery under the doctrine of seaworthiness.")).

Since *Witover*, district courts have allowed complaints to survive a motion to dismiss "where an excursion contract, entered into by a shipowner and a passenger, is alleged to include some sort of guarantee or assurance[.]" *Bailey v. Carnival Corp.*, 369 F. Supp. 3d 1302, 1309 (S.D. Fla. 2019) (citing *Lienemann v. Cruise Ship*

*Excursions, Inc.,* 2018 WL 6039993, at *8 (S.D. Fla. Nov. 15, 2018) (denying dismissal for failure to state a claim where the passenger alleged the shipowner "promise[d] . . . its contracted-for excursions utilized the best local providers at every p[o]rt" and "vouch[ed] for the safety/insurance record of the party with whom it independently contracted") (quotation altered for clarity); *Witover*, 161 F. Supp. 3d at 1146 (finding passenger's allegation that shipowner orally "guarantee[d] . . . the excursion was handicapped accessible . . . sufficient to survive a motion to dismiss")). Celebrity's cases are inapposite because, when there is a shore excursion contract, there is no requirement for an *express* contractual provision to guarantee safe passage.

Notwithstanding this distinction, Celebrity contends that dismissal is appropriate because the ticket contract rejects any duty to provide passengers with a reasonably safe excursion. [D.E. 8-1 at 10 ("In no event shall Carrier be liable for any loss, delay, disappointment, damage, injury, death or other harm whatsoever to Passenger which occurs on or off the Vessel or the Transport as a result of any acts, omissions or negligence of any independent contractors.")]. Celebrity's argument is unpersuasive because – even if Celebrity limited its liability in the excursion contract – Ms. Martinez alleges that she and the cruise line agreed to orally modify that contract to ensure a safe excursion. [D.E. 1 at ¶ 35 ("[Celebrity] and Plaintiff agreed to orally modify the excursion contract based upon [Celebrity's] promises that its contracted-for-excursions utilized 'the best local providers at every port of call' and by virtue of [Celebrity] vouching for the safety/insurance record of the

party with whom it independently contracted (Cayman).")]. That is significant because Ms. Martinez's allegations are not based on a contract for carriage, but an oral agreement that followed. And that allegation, if true, could either undo or supersede the language in the contract to impose liability on Celebrity, making it inappropriate to dismiss this claim at this stage of the litigation. *See Witover*, 161 F. Supp. 3d at 1146 ("[E]ven if Celebrity is correct that the terms of the shore excursion contract limit its general liability, Plaintiff's allegations that said contract was orally modified to include a guarantee that the excursion was handicapped accessible are sufficient to survive a motion to dismiss.").

Whether Ms. Martinez can ultimately prove her theories of liability is an entirely different question and a factual issue that we need not consider in the disposition of Celebrity's motion to dismiss. As such, Celebrity's motion to dismiss count one should be **DENIED** because this is a matter that cannot be decided at this stage of the case. *See Lienemann*, 2018 WL 6039993, at *8 (denying motion to dismiss because "[w]hether Plaintiff will ultimately be able prove her theories of how Carnival breached the non-delegable duty arising out of the Shore Excursion Contract" is a matter that should be reserved for later in litigation).

### C.  *Negligence Based on Apparent Agency (Count 3)*

Ms. Martinez's next allegation is that Celebrity should be vicariously liable for the alleged negligence of the excursion operator in count three under a theory of apparent agency or agency by estoppel. "[A]pparent agency liability requires finding three essential elements: first, a representation by the principal to the

plaintiff, which, second, causes the plaintiff reasonably to believe that the alleged agent is authorized to act for the principal's benefit, and which, third, induces the plaintiff's detrimental, justifiable reliance upon the appearance of agency." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1252 (11th Cir. 2014) (citing *Borg-Warner Leasing, a Div. of Borg-Warner Acceptance Corp. v. Doyle Elec. Co.*, 733 F.2d 833, 836 (11th Cir. 1984) (applying Florida law)).

Apparent agency is so similar to agency by estoppel that, when interpreting Florida law, the Eleventh Circuit does not even consider the two separately. *See Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1078 n.15 (11th Cir. 2003) ("Whetstone also argues that the doctrine of agency by estoppel applies. That doctrine, however, is so similar to apparent authority that there is no significant difference between them, we do not consider agency by estoppel separately") (internal citation and quotation marks omitted). That is, "[u]nder Florida law, agency by estoppel . . . embraces the primary elements of a representation by the principal, reliance on the representation by the claimant, and a change of position by the claimant in reliance on the representation." *United Bonding Ins. Co. v. Banco Suizo–Panameno, S.A.,* 422 F.2d 1142, 1146 (5th Cir. 1970) (citations omitted).

Ms. Martinez meets all the requirements to state a claim for apparent agency and agency by estoppel because she alleges that Celebrity manifested a relationship when the cruise line (1) "bombarded its passengers with a series of internet, brochures and other media, all of which advertise the availability and safety of

10

various [Celebrity] excursions," (2) marketed the excursion on its website, (3) maintained a shore excursion desk with crew members that promoted, advertised, and coordinated the excursions, (4) failed to identify the owner/operator of the tour excursion, and (5) billed passengers directly for the excursions. [D.E. 1 at ¶ 46]. Several other courts of this district have found similar factual allegations sufficient for an apparent agency claim to survive a motion to dismiss and the same reasoning applies here. *See Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1396 (S.D. Fla. 2014) (citing cases). That is, Celebrity made representations that it acted on behalf of the excursion operator and caused Ms. Martinez to reasonably believe that the agent acted for the principal's benefit to which Ms. Martinez detrimentally relied.

Celebrity takes issue with Ms. Martinez's allegations because both causes of action require, as an element, reasonable reliance. Celebrity asserts that Ms. Martinez's allegations are anything but reasonable because its website specifically shows that it did not operate the shore excursion. Celebrity also points to the ticket contract because that too shows that the tour operators were nothing more than independent contractors. Because both of these items undercut any possible agency relationship, Celebrity concludes that count three should be dismissed.

Celebrity's argument relies on the consideration of extrinsic documents in support of the motion to dismiss. A court's review at the motion to dismiss stage is generally limited to the four corners of the complaint with the only exception occurring when: (1) a plaintiff refers to a document in the complaint; (2) the

11

document is central to its claim; (3) the document's contents are not in dispute; and (4) the defendant attached the document to its motion to dismiss. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1284 (11th Cir. 2007) (internal citation omitted).

The ticket contract does not meet this exception because – while the complaint makes passing references to it – it is not central to Ms. Martinez's claim. The apparent agency claim is instead based on several marketing, advertising, and operational decisions that Celebrity made, in Ms. Martinez's view, to deceive customers into thinking that an excursion operator was Celebrity's agent. *See, e.g.*, [D.E. 1 at ¶ 46(a) ("From the moment that Plaintiff purchased her cruise ticket, [Celebrity] bombarded its passengers with a series of internet, brochures and other media, all of which advertise the availability and safety of various [Celebrity] excursions, which were presented as an integral part of the 'cruise ship experience.'")]. Relying on the ticket contract at this stage would also be inappropriate for a separate reason because Ms. Martinez calls into question the authenticity of the contract and it is unclear whether this contract was in effect during the time of her injury. [D.E. 14 at 3 ("Celebrity is attaching an alleged copy of the cruise ticket contract or contract for carriage," but Celebrity "has not established that the Plaintiff ever saw or was even provided these documents")]. Thus, at least two of the four elements have not been met for the Court to consider the underlying ticket contract as a rebuttal to Ms. Martinez's apparent agency allegations.

Putting aside that problem, Celebrity's position is not compelling for a different reason because the Eleventh Circuit has cautioned that "the existence of an agency relationship is a question of *fact* under the general maritime law." *Franza*, 772 F.3d at 1235-36 (collecting cases) (emphasis added). Celebrity tries to sidestep this issue with cases where courts have determined that no agency relationship exists. But, those cases were *not* decided on a motion to dismiss; they were decided on a motion for summary judgment and after a complete development of the factual record. *See, e.g., Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 798 (11th Cir. 2017) (affirming district court's decision to grant summary judgment in cruise line's favor); *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1325 (S.D. Fla. 2011) (granting cruise line's motion for summary judgment on the issue of apparent agency); *Ceithaml v. Celebrity Cruises, Inc.*, 2018 U.S. App. LEXIS 17151, at *10-11 (11th Cir. June 25, 2018) (affirming district court's entry of summary judgment for cruise line). So, while Celebrity invites the Court to consider the content of its website and the underlying ticket contract, we decline to resolve a factual dispute on a motion to dismiss. *See Ceithaml*, 207 F. Supp. 3d at 1356 ("Celebrity argues that Ceithaml's apparent agency theory, even if successfully pled as a negligence claim, must fail because the shore excursion ticket, shore excursion brochure, and passenger ticket contract all release Celebrity from liability. However, consideration of these releases would be premature at the motion to dismiss stage as the release of liability is more properly considered an

13

affirmative defense.") (citing Fed. R. Civ. P. 8(c)(1)). For these reasons, Celebrity's motion to dismiss count three should be **DENIED**.

### D. *Negligent Selection and Hiring (Count 4)*

Turning to count 4, Ms. Martinez alleges that Celebrity is liable for the negligent selection and hiring of the excursion operator. Ms. Martinez claims that Celebrity had a duty to investigate the tour operator before hiring it to transport passengers over open water in a tour boat. [D.E. 1 at ¶ 55]. Celebrity purportedly breached that duty when it (1) failed to conduct a proper investigation into the fitness and competency of the tour operator, (2) failed to investigate whether others had fallen while boarding the tour boat during other related excursions, and (3) failed to investigate complaints from prior passengers about the incompetency and unfitness of the tour operator. *See id*. at ¶¶ 57-58.

"[I]t is well-established that [cruise operators] may be liable for negligently hiring or retaining a contractor." *Smolnikar*, 787 F. Supp. 2d at 1318 (citations omitted). To establish a claim for negligent hiring against a vessel owner, a plaintiff must establish that an excursion company "was incompetent or unfit to perform the work, that the [vessel owner] knew or reasonably should have known of the particular incompetence or unfitness, and that such incompetence or unfitness proximately caused [her] injuries." *Brown v. Carnival Corp.,* 202 F. Supp. 3d 1332, 1339 (S.D. Fla. 2016) (quoting *Gayou*, 2012 WL 2049431, at *5). Negligent hiring occurs, "prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness, and the issue of liability primarily

14

focuses upon the adequacy of the employer's pre-employment investigation into the employee's background." *Mumford v. Carnival Corp.*, 7 F. Supp. 3d 1243, 1249 (S.D. Fla. 2014) (citations omitted); *see also Gharfeh v. Carnival Corp.*, 2018 WL 501270, at *10 (S.D. Fla. Jan. 22, 2018) (holding that plaintiff sufficiently pleaded a negligent hiring claim when plaintiff alleged that Carnival knew or should have known to investigate prior to hiring an employee, whose credentials, training, and experience were inadequate for the position). With respect to the second element—the only one that Celebrity challenges – the relevant inquiry is whether Celebrity diligently inquired into the excursion operator's fitness and competence. *See Smolnikar*, 787 F. Supp. 2d at 1318 (citing *Jackson v, Carnival Cruise Lines, Inc.*, 203 F. Supp. 2d 1367, 1374 (S.D. Fla. 2002)).

Celebrity complains that count four is inadequate because the pleading fails to allege any supporting facts as to what actions the cruise line took prior to the selection of the tour operator, or how it was on notice of the operator's incompetence or unfitness. That argument is unavailing, in many respects, because it is unclear what else Ms. Martinez could have alleged to show that Celebrity did *nothing* to investigate the excursion operator. *See, e.g.*, *Lienemann*, 2018 WL 6039993, at *4 ("Although Carnival argues that these are 'threadbare' allegations unsupported by any facts, it is unclear how one may factually allege a failure to investigate with any more clarity. If a cruise operator has a duty to investigate but no investigation occurs, those are the facts. There is nothing more to say an investigation that never occurred.").

15

It appears that Celebrity wants Ms. Martinez to list all the ways in which it could have investigated the excursion operator but failed to do so. Yet, there is no requirement for Ms. Martinez to be so specific when *Twombly* and *Iqbal* only require a complaint to "contain sufficient factual, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The complaint here meets that threshold because it alleges that Celebrity failed to properly investigate the excursion operator's fitness and competency, and failed to investigate prior customer complaints that put Celebrity on notice. Nothing more is required to raise a reasonable expectation that discovery will reveal substantiating evidence. As a result, Celebrity's motion to dismiss count four should be **DENIED**. *See Smolnikar v. Royal Caribbean Cruises Ltd.,* Case No. 08-23549-Civ-Jordan, D.E. 43-1 at 5 (S.D. Fla. Feb. 24, 2010) (allowing a case to proceed to summary judgment where the amended complaint contained similar allegations that the cruise operator was negligent by failing "to investigate and/or perform its due diligence in researching the background and safety record of the [excursion operator] CHUKKA, and/or in the negligent failure to investigate the safety of the shore excursion being marketed and sold on its cruise ships to its cruise ship passengers by said co-defendant.").

### E.     *Negligent Retention (Count 5)*

Celebrity's final argument takes aim at Ms. Martinez's allegations in count 5 for negligent retention. The elements to state a claim for negligent retention are the same as negligent hiring/selection. That is, a plaintiff must allege that "(1) the

16

agent/employee/contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury." *Witover*, 161 F. Supp. 3d at 1148. "The principal difference between negligent hiring and negligent retention as a basis for employer liability is the time at which the employer is charged with knowledge of the employee's unfitness." *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1318 (M.D. Fla. 2002) (citing *Garcia v. Duffy,* 492 So. 2d 435, 438 (Fla. 2d DCA 1986)). "Negligent hiring occurs when, *prior* to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness, and the issue of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background." *Stires*, 243 F. Supp. 2d at 1318. (emphasis added) (citing cases).

On the other hand, "[n]egligent retention occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment." *Degitz v. S. Mgmt. Servs., Inc.*, 996 F. Supp. 1451, 1461 (M.D. Fla. 1998). "The factors constituting notice, employee fitness, the type of action reasonably required of the employer[,]" and "the negligence of an employer's acts or omissions upon actual or constructive notice" are questions of fact that will "vary with the circumstances of each case." *Garcia*, 492 So. 2d at 441. Either way, to survive a motion to dismiss, a

17

plaintiff must plead sufficient facts to establish that the employer owed and breached a duty to the injured person, which caused the injury. *See id.* at 439.

Celebrity's argument, with respect to count five, is similar to the one presented in count four because it attacks, for a second time, Mr. Martinez's notice allegations. Celebrity claims that Ms. Martinez's allegations fail to include any supporting facts to show how prior complaints from other passengers have any connection to the incompetence of the excursion operator, and how that, in turn, proximately caused her injuries. This argument is misplaced for many of the same reasons previously stated because Celebrity provided a list of ways that the cruise line breached its duty of care. Specifically, Ms. Martinez claims that Celebrity received complaints from prior passengers about the excursion operator's unfitness, that Celebrity failed to investigate these practices, and that passengers (such as herself) participated in a shore excursion when the cruise line was aware of known dangers.

Celebrity maintains that the allegations are premised on pure speculation and that it remains unclear how the excursion operator's unfitness proximately caused Ms. Martinez's injuries. But, the proximate causation is obvious when reading the complaint as a whole. If Celebrity was aware that its excursion operator was acting negligently and failed to warn passengers, there is nothing speculative as to how Ms. Martinez was harmed. She claims, for instance, that a crewmember assisted her onto a vessel and then looked away while she fell and nearly crushed her body between the boat and the dock. If prior passengers were

18

complaining about these same types of incidents (or other negligent acts) and Celebrity stuck its head in the sand then that constitutes negligent retention because the cruise line was well aware of known dangers and did nothing about it.

Celebrity's actual grievance is with the allegations themselves because it either wants more specificity for Ms. Martinez to state a claim or it casts doubt on whether any of these allegations are actually true. Yet, neither of those considerations is appropriate on a motion to dismiss. This is a common pattern throughout Celebrity's motion because the arguments it advances are almost all more appropriately considered on a motion for summary judgment and a factual development of the record – not a motion to dismiss. Accordingly, Celebrity's motion to dismiss Ms. Martinez's complaint should be **DENIED** in all respects.

### *IV. CONCLUSION*

For the foregoing reasons, the Court **RECOMMENDS** that Celebrity's motion to dismiss [D.E. 8] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017

WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 8th day of January, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge